372 So.2d 1231 (1979)
Joseph COUSIN
v.
Michael D. PAGE et al.
Mr. and Mrs. George LAURENT
v.
Michael D. PAGE et al.
No. 63983.
Supreme Court of Louisiana.
June 25, 1979.
*1232 Walter F. Gemeinhardt, A Professional Law Corp., New Orleans, for plaintiffs-applicants.
France W. Watts, III, Watts & Cassidy, Franklinton, for defendant-respondent.
DIXON, Justice.
The Travelers Insurance Company issued an automobile liability insurance policy to Mrs. Sheddrick J. Keys covering a 1974 Chevrolet Camero. On May 25, 1975 this vehicle was involved in an accident resulting in the death of Sam Laurent and injuries to Joseph Cousin. Michael D. Page was driving and Sheddrick Keys, the registered owner of the vehicle, was in the right front passenger seat. The only question at trial was whether The Travelers Insurance Company afforded coverage; the liability issue was stipulated and damages were limited to the policy limits of a Fireman's Fund American Insurance Company policy insuring Page, and, if applicable, the Travelers policy insuring Mrs. Sheddrick Keys. Finding material misrepresentation which voided the automobile liability policy, the district court dismissed the plaintiffs' claims against Travelers. Finding "enough facts of record from which the trial court could have concluded that there was an intent to deceive," the Court of Appeal affirmed the district court judgment. Cousin v. Page, 367 So.2d 875, 877 (La.App.1978).
Janice Edgerson was legally separated from her husband, Donald Batiste, and was cohabitating with Sheddrick Keys when they purchased a vehicle together in August, 1974. On February 11, 1975 Janice had a minor accident, and, in the following week, she and Keys decided that because she was driving the car that was purchased in Keys' name, she should have some liability insurance. So, on February 18, 1975, while Keys was at work, Janice and her sister went to get information on insurance from Tom Sheppard, who had the week before written a policy for Janice's sister, and who knew Janice and her family.
Janice told the insurance agent that she was legally separated from her husband, but the testimony conflicts on whether she also told the agent that she was living with Keys and sharing the expenses and operation *1233 of the vehicle they sought to insure. The agent took notes, examined Janice's driver's license, filled out an application for automobile liability insurance and signed "Mrs. Sheddrick J. Keys" to the application. Later, Travelers issued, in the name of "Mrs. Sheddrick J. Keys," the liability policy against which the plaintiffs, the decedent's parents, the Laurents, and Joseph Cousin, now claim. Travelers filed a pleading to declare the insurance policy null and void, contending that Janice had materially misrepresented that she was "Mrs. Sheddrick J. Keys," that she owned the vehicle, and that no male drivers would be using the vehicle. Travelers claimed that because of these material misrepresentations they had issued a policy to insure a fictional insured who had no insurable interest in the vehicle at a greatly reduced premium rate.
In finding material misrepresentation and voiding the policy, the trial court reasoned that at the time Janice applied for the liability insurance she gave the impression to the insurance agent that she was married to Mr. Keys. Consequently, the agent wrote the policy on the basis that Janice would be driving the car and that no one else would. The Court of Appeal affirmed this judgment, particularly noting:
"... the trial judge had before him testimony that the insurance company was insuring a separated female who would be the sole driver of the automobile and, accordingly, applied the lower premium rate; that Travelers would not have issued the policy for the premiums charged if it had been aware that a young male driver, nineteen (19) years of age, would be driving the automobile; and that a copy of the application was mailed to Janice Batiste and no action was taken by her to correct or change anything contained therein... ." 367 So.2d at 877.
The issues are: (1) whether Janice, who applied for the policy, made misrepresentations to the insurance agent; (2) if so, whether the misrepresentations were made with the intent to deceive; (3) whether Janice had an insurable interest in the vehicle; and (4) whether Janice gave Keys permission to use the insured vehicle so as to afford coverage to the "second permittee" driver, Page, under the omnibus insured clause of the policy.
R.S. 22:619, which sets forth the requirements for avoidance of an insurance contract, provides in subsection A (the portion relevant to automobile liability insurance):
"... no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." (Emphasis added).
Under R.S. 22:619A only a finding of intent to deceive will defeat coverage. DiGerolamo v. Liberty Mutual Ins. Co., 364 So.2d 939 (La.1978). The courts of appeal in interpreting a similar provision in R.S. 22:619B have reasoned that strict proof of fraud is not required to show the applicant's intent to deceive, because of the inherent difficulties in proving intent. Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality. Watson v. Life Insurance Co. of Louisiana, 335 So.2d 518, 521 (La.App.1976), citing Reed v. American Casualty Co. of Reading, Pa., 317 So.2d 648 (La.App.1975), writ refused, 320 So.2d 914 (La.1975); Parfait v. Minnesota Mutual Life Ins. Co., 311 So.2d 558 (La.App.1975), writ refused, 313 So.2d 847 (La.1975); Murphy v. Continental Casualty Co., 269 So.2d 507 (La.App.1972).
The insurer who issued the liability policy and who now asserts this special defense to avoid coverage has the burden of proving that there was a misrepresentation, and that it was made with the intent to deceive. Travelers has not carried this burden of proof.
*1234 Janice, her sister and the insurance agent were all present when Janice applied for the liability insurance. Janice and the insurance agent gave contradictory accounts at trial concerning the statements given by Janice when she sought information on insurance coverage. Janice's sister was hospitalized at the time of the trial and did not testify. Counsel for both sides stipulated that "if she were called, she would testify to the same words that Mrs. Batiste testified to."
Janice testified that she informed the agent that she was married to Batiste, but legally separated; that she was living with Keys; that the car was registered in Keys' name; that Keys was also driving the car; and that she would be using the car to go to and from work. Janice further testified that she neither filled out the application for insurance nor did she sign the application.
On cross-examination Janice's testimony was summarized as follows:
Cross-examination by Mr. Watts:
"Q It's your testimony that your sister, Phyllis Penn, went with you to Mr. Tom Sheppard to purchase the insurance?
A Not to purchase. We went there in the beginning to get information on obtaining the insurance.
. . . . .
Q Is it your testimony, is it your sworn testimony under oath, that you told Mr. Tom Sheppard that you were not married to Sheddrick Keys?
A Right.
Q It is also your sworn testimony that you told Mr. Sheppard that Mr. Keys owned the car?
A Yes, it is.
Q Is it also your sworn testimony that you told Mr. Sheppard that Mr. Sheddrick Keys, who was then nineteen years old, would drive the car?
A Yes."
The agent testified that he filled out the information on the application and that he was "led to believe" that Janice was married to Keys but legally separated. Both the agent and Janice testified that he knew Janice and her family, the Edgersons, and especially her grandfather, his son, and several other members. The application lists Janice's grandfather, father, sister and cousins as other members of her family also covered by Travelers. The agent had just the week before obtained insurance for Janice's sister. He had Janice's driver's license, which gave her name as "Janice E. Batiste." The application directs in Question 1 that the name of the applicant be spelled out "exactly as on driver's license." When Completing this line, the agent wrote "Mrs. Sheddrick J. Keys." Question 6A directs that the name be spelled out "as it appears on driver's license." The agent filled in "Janice Batiste E. Keys." Neither of these names in fact appear on Janice's driver's license.
Knowing the Edgerson family, having sold Travelers insurance to other members of the family, and noticing the name on Janice's driver's license, the agent should have questioned Janice more thoroughly about her marital situation and about any males who might use the vehicle. As the dissenting judge in the Court of Appeal commented "the information required by an insurance company to process an application is not always apparent to a layman." 367 So.2d at 880. With his knowledge of the insurance business and his familiarity with the Edgerson family, the agent who filled out and signed the application was in a better position to obtain from Janice the relevant information for processing the application and to make reasonably certain that he understood the situation. Instead, he thought Janice's mother "could have been an Edgerson and married a Batiste and her name could be Janet Edgerson Batiste and when she married, she was a Keys," assumed that Janice had not changed her name on her driver's license, and thought it irrelevant to question Janice more about Batiste and Keys.
The agent's testimony contains several incorrect assumptions and inferences which might be accepted as conflicting with Janice's testimony regarding her marital status. *1235 It does not, however, prove that Janice intended to withhold or misrepresent relevant information, nor does it contradict Janice's testimony that she told the agent that Keys also would be driving the vehicle.
The ultimate issue is whether Janice misrepresented with the intent to deceive that she alone would be driving the vehicle. As the dissenting judge reasoned:
"Indeed, the application itself provides an opportunity to inquire with regard to others who will drive the insured vehicle under item No. 6, `We Need to Know These Things About People Living In Your Household (including students and military personnel) Who Operate Any Vehicle.' The only listing made by the agent who filled out the application was `Janice Batiste E. Keys.' Had the agent written `no others' or `none,' it would have indicated that he had asked her this question. However, from the record, I cannot find that this question was ever asked of Janice. The record indicates that the agent listed no other drivers, a fact he assumed because the woman was legally separated. Under the rule stated in Fruge v. Woodmen of World Life Insurance Society, 170 So.2d 539 (La.App. 3rd Cir. 1965), this error is binding on the insurer and does not bind the insured." 367 So.2d at 880.
See also, Cloud v. Security General Life Ins. Co., 352 So.2d 406, 407 (La.App.1977); Morein v. American Physicians Ins. Co., 192 So.2d 887 (La.App.1966).
The Court of Appeal found evidence of intent to deceive because, if the true situation had been known, Travelers would not have charged the lower premium rate, and because a copy of the application was mailed to Janice and she did not act to correct or change anything in it. However, the record does not demonstrate that Janice or Keys knew the differences in rates. (In response to questions posed at his deposition, Keys testified that he had never applied for or bought insurance; that he did not know anything about buying it; and that Janice bought the insurance while he was working).
The record does not clearly establish that Janice received a copy of the application that the agent filled out and signed; the application was not attached to the policy. Nor does the record establish that Janice read the application and intentionally failed to correct any misinformation. (Keys in deposition indicated that he saw that "Mrs. Sheddrick Keys" was on the policy but he did not think anything about it except that his name was there and he thought he had insurance).
From the record we cannot find that Janice or Keys had actual knowledge of the falsity of the representations in the application, or that they recognized the materiality of any misrepresentations. We cannot find that any misrepresentations were made with the intent to deceive; in the absence of such evidence, an intent to deceive cannot be inferred.
Travelers further contends that if this court finds no material misrepresentation, we should still find the insurance contract null and void for the reason that Janice had no "insurable interest" within the meaning of R.S. 22:614B. However, in DiGerolamo v. Liberty Mutual Ins. Co., 364 So.2d at 941-942, we reasoned that, by its express terms, R.S. 22:614 requires insurable interest in insurance contracts on "property or of any interest therein or arising therefrom," and we concluded that the only two statutes concerning insurable interest (R.S. 22:613-614) were not applicable to liability insurance.
Finding no controlling Louisiana jurisprudence and no applicable statutes, we indicated, in DiGerolamo, that we were disposed to find no Louisiana requirement of insurable interest in liability insurance. However, in the instant case, as in DiGerolamo, we find again that it is unnecessary to reach this issue. The record indicates that Janice supplied the $600 down payment for the vehicle; that the down payment was not a loan from Janice to Keys, and Keys did not repay it to Janice; that Janice and Keys each paid half the installment notes to GMAC, and that even after Janice and Keys split up, each continued to *1236 pay half the notes and to share the use of the insured vehicle until the accident. From this evidence it is apparent that Janice was a co-owner of the insured vehicle even though it was registered in Keys' name.
Finally, Travelers contends that Mrs. Sheddrick Keys was the named insured on the policy and Mr. Sheddrick Keys, the registered owner, was not the named insured; the record does not indicate that Janice gave Page permission to use the vehicle; therefore, the policy did not cover the instant case. The pertinent clause in the policy provides:
"Persons Insured
Each of the following is an insured under Part I:
(a) with respect to the owned automobile,
(1) the named insured and any resident of the same household,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and
(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above;"
This clause should be applied in harmony with the strong legislative policy that all insurance contracts in Louisiana are executed for the benefit of the injured parties and are to provide coverage for all insureds. R.S. 22:655 provides:
"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy." (Emphasis added).
See, Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (La.1976).
In Hughes, supra, the named insured did not even know when his friend took the car, or when the friend would bring it back. However, considering the circumstances and the relationship between the named insured and his friend, we found that because the named insured had given his friend permission to use the car as his own, the possibility that the friend might allow another to drive the car was clearly foreseeable. We held that the omnibus clause of the policy covered the second permittee.
In the instant case the record indicates that Janice and Keys were sharing the use and expenses of the vehicle. At the time of the accident Janice was using the vehicle during the week to go to and from work, and Keys was driving it on the weekends. Janice testified that although she did not know Keys was using the car on the night of the accident, Keys did have possession of the car and that, in effect, she had consented to Keys using the car the night of the accident.
Considering the circumstances and the relationship between Janice and Keys (cohabitation and co-ownership of the car), there can be no question of Keys' permission to use the car on the night of the accident. As the dissenting judge reasoned:
"... This permission contained no restrictions since, in truth and in fact, the permission was for Keys to use the car as his own. The permission was of the broadest possible scope (i. e. co-ownership) and included the possibility that Keys might allow someone else to drive the car. See Hurdle v. State Farm Mutual Automobile Insurance Co., 135 So.2d 63 (La.App. 2d Cir. 1961)." 367 So.2d at 881.
Keys gave Page permission to drive, and Keys was sitting in the right front passenger seat on the night of the accident. Keys' presence and permission extended the insurance coverage to the driver, Page. See Hughes, supra, 340 So.2d at 295.
Accordingly, the judgment of the Court of Appeal and the district court are reversed, and there is now judgment for the *1237 plaintiffs and against the defendant, The Travelers Insurance Company, in the amount of $10,000 for Joseph Cousin and $10,000 for Mr. and Mrs. George Laurent, at defendant's cost.