415 So.2d 501 (1982)
Louis DAVIS, Jr. and Alice Davis
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.
No. 14844.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Robert D. Hornstein, St. Gabriel, for plaintiffs-appellees Louis Davis, Jr., and Alice Davis.
*502 Charles A. Schutte, Jr., George Mathews, Baton Rouge, for defendant-appellant State Farm Mut. Auto. Ins. Co.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
LOTTINGER, Judge.
This is a suit by Louis Davis, Jr. and his wife, Alice, against State Farm Mutual Automobile Insurance Co. (State Farm) to enforce coverage under an insurance contract issued by State Farm to the Davises. State Farm denied coverage, contending that the contract had been rescinded because of misrepresentation in the application. La.R.S. 22:619. From a trial court judgment finding no material misrepresentation, the defendant has appealed.

FACTS
Prior to May 16, 1980, Mr. Davis was seeking automobile insurance because a previous policy with another insurance company had been cancelled for nonpayment of premium. An appointment was set up between Mr. Davis and David Brian, a State Farm agent, to take place on May 16, 1980, at a Baton Rouge restaurant. Mr. Davis was interested in insuring two vehicles, a 1979 Buick Regal, and a 1978 Ford Van. As the two sat across the table from each other, Mr. Brian commenced filling in the application form by asking Mr. Davis the questions appearing thereon. General information was filled in, and Mr. Brian then asked the following questions:
"During the past 5 years, has the applicant, any household member, or any regular driver:
"a. Had license to drive or registration suspended, revoked or refused? Yes ___ No ___
"b. Been the driver in any automobile accident or loss? Yes ___ No ___
"c. Been convicted (or forfeited bail) for traffic violations? Yes ___ No ___."
Both Mr. Davis and Mr. Brian agree that the questions were read to Mr. Davis as they appeared on the application. Mr. Davis admitted that he answered "no" to subpart "a." However, Mr. Davis claims he answered "yes" to subpart "b" and advised Mr. Brian of one accident. The application shows a red light violation in March of 1980 and Mr. Davis contends he told Mr. Brian about two speeding tickets which were about two and one half to three years old. Mr. Davis does not contend he reported any violations concerning his wife. It appears that a second inquiry was made by Mr. Brian because of his concern that the previous insurance policy had been cancelled during its contracted term. It was at this second inquiry that Mr. Brian was reportedly told of the red light violation.
A check by State Farm with the Department of Motor Vehicles revealed the following violations:
Louis Davis
1. March 1, 1980signs and signals;
2. May 14, 1978speeding;
3. May 19, 1977speeding;
4. March 4, 1978improper turn; and
5. December 20, 1978accident.
Alice Davis
1. August 9, 1979signs and signals;
2. September 12, 1979speeding; and
3. March 5, 1980speeding.
The application was filled in on May 16, 1980, a Friday, received by State Farm on the 20th, a Tuesday, at which time it was returned because it lacked a "customization" report on the Ford Van. It was returned and received by State Farm a second time on the 29th at which time a motor vehicle report was ordered. The following day, May 30, a Friday, the initial decision to rescind the insurance policy was made because of the numerous traffic violations. This decision to rescind was reviewed by an underwriting supervisor on June 2, approved, and a rescission letter was sent out on June 4. Unfortunately, Mrs. Davis was involved in an accident on June 3, and same was reported to State Farm that day.
The Davises settled with the other party in the accident by paying the sum of $432.77. They have sued to recover this amount plus $1,223.29 for damages to their Buick Regal, as well as penalty and attorney fees.

*503 SPECIFICATIONS OF ERROR
Defendant-appellant in appealing contends the trial judge erred:
(1) in excluding evidence offered by State Farm to show the misrepresentations made were material, and
(2) in applying a heavier burden of proof than the law requires to prove intent to deceive.

INTENT TO DECEIVE
The statute under which State Farm rescinded the insurance contract, and upon which it relies is La.R.S. 22:619 A which provides:
"Except as provided in Sub-section B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive."
To defeat coverage it is necessary to find an intent to deceive. The difficulty of proving intent to deceive is recognized by the courts, thus the courts look to the surrounding circumstances indicating the insured's knowledge of the falsity of the representation made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality. Cousin v. Page, 372 So.2d 1231 (La.1979).
When we review the facts as presented in the case sub judice, we are convinced that the trial judge was manifestly wrong in his decision.
The ever-increasing costs of automobile insurance has caused some insurance companies to conduct advertising campaigns explaining how a safe driving record can save a driver money when he shops for insurance. This advertising campaign has found its way into television, newspaper and radio. It is certainly hard to conceive that an automobile driver would not have been witness to such advertising and known that an accident-free or traffic violation-free driving record would save him money on his insurance.[1] Here we are not dealing with a driver who for the first time is seeking to obtain insurance vis-a-vis the applicant in Cousin v. Page, supra. We must conclude that because of the previous insurance that Mr. Davis had, he had some experience in obtaining automobile insurance and the significance in answering all questions on the application truthfully.
The agent in question had only been working for State Farm for three weeks, but we fail to find any significance in this fact. Extensive training is conducted prior to the time that an individual is put out into the field as a State Farm agent. Mr. Brian certainly knew that a motor vehicle report would be ordered on the Davises, therefore it would be of no benefit to him to fail to insert the correct answers to those questions relating to traffic violations. It would be ridiculous to assume that an agent would spend time and effort in filling out an application and sending it in for approval when he knew full well that the applicant could not qualify for the insurance.
The applicant in this case is different from the applicant in Cousin v. Page, supra, in that here Mr. Davis knew of his own violations as well as those of his wife, and the questions asked applied very clearly not only to the applicant's violations, but also to those of any household member. In the instant case Mr. Davis signed the application, whereas in Cousin the applicant did not. Because of the fact that he had had automobile insurance previously, he either *504 knew or should have known of the importance of a driving record when seeking automobile insurance. The trial judge found as fact that both Mr. Davis and Mr. Brian were telling the truth. This we find to be manifestly in error. It is inconceivable to this court that someone who already has insurance, in applying for insurance with another company, can misunderstand the simple question: "During the past five years, has the applicant, any household member, or any regular driver: ... b. Been the driver in any automobile accident or loss? ... c. Been convicted (or forfeited bail) for traffic violations...." To argue, contend or find that someone can misunderstand such questions begs the real question, that is, was the applicant telling the truth? It is further obvious to this court that of the two people sitting at the restaurant table filling out the application, the only one that did not realize that State Farm was going to run a motor vehicle report was the applicant, Mr. Davis. Therefore, we find a misrepresentation with intent to deceive, and find that Mr. Davis recognized the materiality of this misrepresentation.
The trial judge was of the opinion that the way to prove plaintiff knew the materiality of his driving record was to show that the previous policy had been cancelled, or a previous application had been denied, because of a driving record. In essence, the trial judge wants to give every deceiver one free bite at the insurance apple. That is not what the law provides, and that is not the only way to prove materiality.

MATERIALITY
The trial judge was also of the erroneous opinion that though the driving record of an applicant may be material to State Farm, it is not necessarily material to the court. The significance of the materiality issue is that even if the information given by applicant was false, if the insurance company would have issued the policy anyway, then it is not material. It is abundantly clear in the case sub judice from the evidence submitted that had the State Farm agent known of the poor driving records of the Davises at the time of the application, he would have informed the Davises that he could not accept their application.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed and there is now judgment in favor of defendants dismissing the plaintiffs' suit, with plaintiffs to pay all costs both in this court and the trial court.
REVERSED AND RENDERED.
SHORTESS, J., concurs.
EDWARDS, J., concurs in the result only.
NOTES
[1] In his oral reasons for judgment the trial judge refused to accept that the plaintiffs or any person knows that driving records are important. He opined that the lawyers who litigate the cases, the underwriters and the agents know that they are important. It would certainly be a sad commentary on the advertising industry if, after having spent vast sums of money advertising the fact that safe driving records save insurance premium dollars, the insurance companies were only able to reach and inform certain lawyers, underwriters, and agents.