485 So.2d 245 (1986)
Sandra A. SCHEXNAIDER, Plaintiff-Appellant,
v.
Anthony G. ROME, d/b/a Roman Mill Bakery, et al., Defendants-Appellees.
No. 84-1163.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
*246 Olivier and Brinkhaus, John L. Olivier, Sunset, for plaintiff-appellant.
Martin and Taulbee, Terry L. Rowe, Allen, Gooch, Bourgeois, Breaux & Robison, P.C., Frank A. Flynn, David S. Cook, Lafayette, for defendants-appellees.
Before DOMENGEAUX, FORET and KING, JJ.
KING, Judge.
The issue presented on appeal is whether or not the trial court decision denying plaintiff recovery against an insurer under its automobile liability insurance policy, for the reason the policy was void ab initio, is correct.
This litigation involves a personal injury suit brought by a guest passenger, Sandra A. Schexnaider (hereinafter referred to as the plaintiff), against her host driver, Anthony G. Rome (hereinafter referred to as Rome), and his automobile liability insurer, Mid-American Indemnity Company (hereinafter referred to as the insurer). The insurer asserted the defense that the automobile liability insurance policy issued by it to Rome was void ab initio because Rome and a third-party-defendant, Richard B. Baggett, an insurance broker, colluded to provide false and misleading information which materially affected acceptance of the insurable risk and issuance of the policy by the insurer. After trial on the merits on July 11, 1984 the trial court rendered judgment, which was signed on September 27, 1984, in favor of the insurer and rejecting plaintiff's demands against it. The trial court assessed costs of court against the *247 insurer but rendered judgment on the insurer's third party demand in favor of the insurer against the third-party-defendant, Richard B. Baggett, for these court costs.
Both plaintiff and the insurer appeal. Plaintiff alleges the following assignments of error on appeal:
(1) The trial court erred in admitting, over objection of plaintiff's counsel, testimony of Richard B. Baggett, an insurance broker, as to what Rome told him at the time of applying for insurance for the purpose of proving intent to deceive, misrepresentation and fraud on the part of Rome;
(2) The trial court erred in finding that the insurer met its burden of proof in showing that Rome filed a false application for liability insurance with intent to deceive;
(3) The trial court erred in failing to find that Richard B. Baggett was an agent for the insurer, at least for certain purposes, including the preparation and filing of application forms supplied by the insurer, so that any fraud and/or misrepresentations engaged in by him in carrying out those functions are imputable to the insurer and estop it from denying coverage on the policy of automobile liability insurance which it issued;
(4) The trial court erred in finding that the insurer met its burden of proof in proving a special defense to coverage such as would make the insurance policy issued void ab initio; and
(5) The trial court erred in failing to find coverage for the claims of plaintiff, Sandra A. Schexnaider, under the automobile liability insurance policy issued to Rome.
The insurer alleges on appeal that the trial court erred in assessing court costs against it, while at the same time, dismissing plaintiff's suit against it. We affirm in part, amend in part, reverse in part, and render judgment.

FACTS
The trial court, in its Reasons for Judgment, made findings of fact in this case which we adopt as our own and which are as follows:
"On April 12, 1982, Mrs. Sandra A. Schexnaider was a guest passenger in an automobile driven by Anthony G. Rome, when she became involved in a serious accident due to the negligence of Rome. She has filed this suit for personal injuries against him and his insurer, Mid American Indemnity Company. There are other issues in this case which have passed aside, however, on the trial held on July 11, 1984, the two issues presented to the Court were whether or not Mrs. Schexnaider was an employee of Mr. Rome thereby precluding her from filing a tort suit against him, and whether or not the insurance policy issued by Mid American Indemnity Company to Mr. Rome was valid and covered this accident. It is a finding of this Court that the insurance policy issued by Mid American Indemnity Company is invalid and void ab initio and unfortunately affords Mrs. Schexnaider no coverage. Mr. Anthony G. Rome was a nominal party defendant but he was not served and his whereabouts are unknown.
For some months prior to the date of the accident Mr. Rome had acquired certain insurance policies on other matters from Richard B. Bagert [sic], who did business as the Bagert [sic] Insurance Agency. After the accident of April 12, 1982, Mr. Rome approached Mr. Bagert [sic] to acquire automobile liability coverage on the vehicle he was driving while the accident occurred injuring Mrs. Schexnaider. In collusion Mr. Rome filed a false application and predated it to April 8, 1982, some four days before the accident. In this he was joined by Mr. Bagert [sic] in making false statements to the company. Mr. Bagert [sic] is an insurance broker and has no authority on his own to bind a company. In due course he sent this application to Mid South Underwriters, Inc., who is an insurance agent and who is the only agent for Mid American Indemnity Company. The application seemed valid, therefore Mid South Underwriters procured a policy *248 of insurance written by Mid American Indemnity Company, covering the vehicle involved in the accident and the date of the coverage was April 8, 1982.
The application called for the driver's license of Mr. Rome and he gave them the number of a California driver's license. It was necessary to send this information to California to get his driving record and when it was returned it was found out that he had an expired license. Mid American Indemnity Company then got his Louisiana driver's license and obtained from the Louisiana Department of Public Safety a statement showing Rome's many traffic violations. Prior to the accident Rome had the following convictions, forfeitures or interviews:

 7-26-80  Speeding
 7-29-80  Signs
 5-05-81  Speeding
 6-01-81  Speeding
 8-03-81  Speeding
 9-18-81  D.W. Interview
10-19-81  Speeding
11-10-81  Speeding
 3-10-82  Speeding
 5-03-82  Affidavit
 5-11-82  Speeding

The application failed to show that Mr. Rome had this large amount of speeding violations and the evidence is abundantly clear that had Mid American Indemnity Company had this information they would not have issued him a policy. It is also a fact and evident that had they known he had had an accident on April 12, 1982, they would not have issued the policy with an earlier date and not even at a later date.
A fraud was conspired and committed by Anthony G. Rome and Richard B. Bagert [sic] against the Mid American Indemnity Company."

HEARSAY EXCEPTION
Plaintiff avers that the trial court erred in allowing into evidence the testimony of Mr. Baggett with respect to what Rome told him at the time Rome applied for liability insurance, over plaintiff's counsel's objection that such testimony constituted inadmissible hearsay. The substance of Baggett's testimony was that Rome told him that he (Rome) did not have liability insurance at the time of the accident on April 12, 1982.
"An important exception to the hearsay rule makes admissible in evidence declarations against interest by a declarant not a party to the suit. The circumstance that the declaration is against the pecuniary or other interest safeguards the reliability of such evidence. LeBlanc v. Phoenix Assurance Company of New York, La.App., 158 So.2d 256 (1963); McCormick on Evidence, § 253, pp. 546-547 (1954); 29 Am.Jur.2d., Evidence, § 617, pp. 670-671." Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81 at pages 85-86 (1972).
For this exception to apply, the declarant must also be unavailable to testify. Jack Neilson, Inc. v. Chicago Insurance Company, 429 F.2d 540 (5th Cir.1970).
In Campbell, supra, the Louisiana Supreme Court held that:
"Under the Louisiana Motor Vehicle Safety Responsibility Law, we regard the admission of non-insurance as a declaration against pecuniary interest. The existence of an uninsured status at the time of a collision requires either the payment of damages, the deposit of security, or the suspension of the driver's license. See LSA-R.S. 32:872.
Although plaintiff's suit was against the insurer alone, the insurer brought a third party demand against Gloria K. Gimnich, the declarant's wife. The major issues included the fault of the declarant's wife in causing the collision and the uninsured status of declarant's automobile. See Booth v. Fireman's Fund Insurance Company, supra. The existence of public liability insurance covering the use of the car was a matter within the personal knowledge of the owner. Neither the declarant nor his wife was available as a witness at the trial. Hence, the letter was admissible as a declaration *249 against interest." (Footnote omitted.) Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81 at page 86 (1972).
In the case at hand, though Rome was named as a party defendant, his whereabouts were unknown, service had not been made on him, and he was unavailable to testify at trial. Like the circumstances in Campbell, supra, Rome's statement that he was uninsured at the time of the accident was certainly a declaration against his pecuniary interests. Thus, both requirements for the admissibility of Baggett's testimony regarding Rome's declaration were satisfied. The trial judge correctly admitted into evidence the hearsay testimony of statements made by Rome. We find no merit in this assignment of error.

ASSIGNMENTS OF ERROR NUMBER 2 AND 4
Plaintiff, in her second and fourth assignments of error, alleges that the trial court erred in finding that the insurer had met its burden of proof in showing that Rome furnished fraudulent statements and or misrepresentations with the intent to deceive the insurer. Plaintiff, in making these assignments of error, also maintains that Rome's signature on the insurance application form was a forgery.
LSA-R.S. 22:619 sets forth the requirements for avoidance of an insurance contract. Section A of LSA-R.S. 22:619 is the relevant provision for automobile liability insurance contracts. Cousin v. Page, 372 So.2d 1231 (La.1979); DiGerolamo v. Liberty Mut. Ins. Co., 364 So.2d 939 (La. 1978). LSA-R.S. 22:619 A provides that:
"... no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive."
Under LSA-R.S. 22:619 A, only a finding of intent to deceive will defeat coverage on an automobile liability insurance policy. Cousin v. Page, supra; DiGerolamo v. Liberty Mut. Ins. Co., supra.
The courts have recognized the difficulty of proving intent to deceive and have accordingly held that strict proof of fraud is not required in order to show an intent to deceive. Cousin v. Page, supra; Jamshidi v. Shelter Mut. Ins. Co., 471 So.2d 1141 (La.App. 3rd Cir.1985).
"Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." Cousin v. Page, 372 So.2d 1231, at page 1233 (La. 1979).
When the liability insurer asserts this defense it bears the burden of proving that there was a misrepresentation and that it was made with the intent to deceive. Cousin v. Page, supra; Jamshidi v. Shelter Mut. Ins. Co., supra.

FORGERY
Plaintiff claims that Rome's signature was forged on the insurance application form. Plaintiff introduced a chattel mortgage allegedly bearing the signature of Rome to show that the signature on the insurance application form was a forgery. This chattel mortgage, however, was an uncertified copy, and there was no evidence presented to show that the signature on the chattel mortgage was that of Rome. The trial court admitted the copy of the chattel mortgage into evidence, but obviously accorded it little or no weight. We find no manifest error in the finding of fact by the trial judge that the plaintiff failed to prove Rome's signature on the insurance application was a forgery.

INTENT TO DECEIVE
Plaintiff claims that she has rebutted the testimony of Baggett that Rome *250 made misrepresentations with the intent to deceive the insurer on his application for insurance. The information that was omitted by Rome and Baggett in the insurance application form certainly constituted a misrepresentation. Rome falsely stated on the application, where he was requested to list all moving violations, convictions, and/or accidents during the past thirty-six months, that he had only one accident and one speeding violation. Rome failed to report the numerous violations which he had incurred in Louisiana during this time period. Rome additionally failed to report his current Louisiana driver's license number. Instead, he listed a California driver's license number on the application, which, when checked, revealed no violations but only that it had expired. However, the most blatant misrepresentation was Rome's failure to mention the April 12, 1982 accident in the application, and his collusion with Baggett to back-date the application for insurance (to April 8, 1982) so that the accident (of April 12, 1982) would fall within the term of the policy coverage. Rome and Baggett then colluded to manipulate a postage meter to show the date of April 8, 1982, prior to the accident, as the date on which the insurance application was mailed. However, the cancellation of this postmark on the application's envelope was shown and dated April 23, 1982. It is clear from these surrounding circumstances that Rome had knowledge of the misrepresentations that he made and that he made them with the intent to deceive.

MATERIALITY
It is also obvious from the surrounding circumstances that Rome was aware of the materiality of his misrepresentations. Rome had to have known that his numerous violations and accidents would effect the possibility of the issuance of an insurance policy or the rate of premiums to be charged. Rome certainly had to have known that no insurance company would have issued a policy covering an accident which had occurred prior to his making application for the insurance.
In Davis v. State Farm Mut. Auto. Ins. Co., 415 So.2d 501 (La.App. 1st Cir.1982), and Shelter Ins. Co. v. Cruse, 446 So.2d 893 (La.App. 1st Cir.1984), two cases involving automobile liability insurance where the applicants made misrepresentations as to prior driving records, the First Circuit found that material misrepresentations regarding driving records were made with the intent to deceive and that therefore the policies were void ab initio. The Third Circuit in Jamshidi v. Shelter Mut. Ins. Co., supra, a case involving an insured's right to collect damages for loss of his vehicle due to theft and fire, held that the insured intended to deceive when he failed to report four speeding tickets, an accident, and a probated sentence. The insured in that case also failed to report his Louisiana driver's license which, when checked, showed numerous traffic violations, and instead reported a Texas driver's license, which, when checked, revealed no violations.
We accordingly hold that Rome made material misrepresentations with the intent to deceive and find no manifest error in the trial court's findings of fact and conclusions of law.

ASSIGNMENT OF ERROR NUMBER 3
Plaintiff contends in her third assignment of error that the trial court erred in finding that Baggett was a broker instead of an agent of the insurer at the time of filling out the application for insurance. Plaintiff argues that the insurer issued a policy of insurance to Rome upon the grossly incomplete (plaintiff's contention) application form returned to it by Baggett, which indicates that Baggett represented the insurer and acted as its agent when he was filling out the insurance application furnished by the insurer (also plaintiff's contention). Plaintiff claims that since the knowledge of such an agent or his mistake of fact may become that of the insurer, the insurer cannot void this policy because of false or incomplete information provided by its agent on the insurance application. See e.g. Tiner v. Aetna Life Insurance Company, *251 291 So.2d 774 (La.1974); 16 Appleman, Insurance Law and Practice, Section 8731, pp. 375-376 (1981).
Contrary to the assertions of plaintiff, the facts of this case show that Baggett was not the agent of the insurer, but rather that he was a broker. 16 Appleman, Insurance Law and Practice, Section 8726, pp. 338-340, distinguishes a broker from an agent as follows:
"A broker is ordinarily defined as being one who acts as a middleman between the insured and the insurer and who solicits insurance from the public under no employment from any special company, but having secured an order either places the insurance with a company selected by the insured, or, in the absence of such selection, with a company selected by the broker. He enjoys no fixed or permanent relationship to an insurer but rather holds himself out for employment by the general public. And a broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from the ordinary insurance agent who is employed by an insurance company to solicit and writ insurance in the company. (Footnotes omitted.)" 16 Appleman, Insurance Law and Practice, Section 8726, pages 338-340.
Baggett testified as to his relationship with the insurer as follows:
"Q. Prior to that time, had you had any dealings with Mid-American Insurance Company?
A. I had dealings with their broker.
Q. Who was their broker?
A. I think it was Mid-South.
Q. Okay, you never had any direct dealings with Mid-American Insurance?
A. No, no.
Q. You did not have the power to bind Mid-American Insurance yourself to issue any policies?
A. No, sir.
Q. And you did not have a policy to issuethe authority to issue any policy on behalf of Mid-American, did you?
A. Not to my recollection.
Q. And as a matter of fact, you didn't deal directly with Mid-American ever in your career as an insurance broker?
A. Well, as a broker, you never would."
And, Mr. Richter, Vice-President in charge of claims for the insurer, upon being questioned by the trial court, testified as follows:
"BY THE COURT: What is your interpretation of difference between a broker and an agent?
BY THE WITNESS: Well, a broker represents the client to the company, and an agent represents the company to the client. An agent cannot commit or bind or write the policy, issue endorsementsor, I'm sorrya broker cannot do this for a comany [sic] whereas an agent can.
BY THE COURT: Do you have agents?
BY THE WITNESS: We have one agent, one general agent: Mid-South Underwriters.
BY THE COURT: Did this policy come through that agent?
BY THE WITNESS: Yes.
BY THE COURT: And Mr. Baggett contacts Mid-South Underwriters? What's the procedurewhat happens after he gets the application?
BY THE WITNESS: The application is forwarded to Mid-South Underwriters where the underwriters, of course, check and review it.
BY THE COURT: Okay, where are they?
BY THE WITNESS: They're in Shreveport. They are in the same group of buildings that we are in.
BY THE COURT: Okay.
BY THE WITNESS: So, they have the opportunity ... They start checking the applications and so forth and proceeding with the issuance of policies. They have the authority to issue Mid-American Indemnity Company policies.

*252 BY THE COURT: Did they issue this policy or did you issue this policy?
BY THE WITNESS: They issued the policy, sir."
Plaintiff relies on Tiner v. Aetna Life Insurance Company, supra, to support her contention that Baggett was an agent of the insurer. In that case, the Louisiana Supreme Court held that:
"A broker who procures insurance which is accepted and issued by an insurance company pursuant to application forms furnished to the broker by the company is considered the agent of such company in the issuance of the policy." Tiner v. Aetna Life Insurance Company, 291 So.2d 774, at page 777 (La.1974).
However, Tiner is distinguishable from the case at hand. In Tiner, the "broker" handled individual medical expense policies for Aetna as their agent since his own company (he was a registered agent for another company) did not sell them. The "broker" went to the insured's parents' home and brought with him an Aetna application form, along with an Aetna rate book. These were the same form and rate book as used by Aetna agents. The application was processed in the same manner as would an application received from a registered Aetna agent and the "broker" also received the same commission as would an Aetna agent.
In the case at hand, unlike Tiner, Baggett was not a "broker" acting as an agent for the insurer, nor had he ever done business directly with the insurer. Baggett did not use an insurance application form provided by the insurer but instead he used a form provided by Mid-South Underwriters, which contained the Bossier City, Louisiana address of Mid-South Underwriters. On the face of this form was written "WE RESERVE THE RIGHT TO PLACE THE REQUESTED COVERAGES WITH A CASUALTY COMPANY OF OUR CHOICE." Baggett also did not have the power to bind the insurer on the receipt of this insurance application.
Review of the evidence does not show that the trial court was manifestly in error in finding that Baggett was not an agent or acting as an agent for the insurer so as to impute any knowledge or mistake of fact of Baggett to the insurer to prevent the voiding of this policy ab initio.

ASSIGNMENT OF ERROR NUMBER 4
Plaintiff, in her final assignment of error, contends that the trial court erred in not finding that the insurer was equitably estopped from denying coverage under the policy issued to Rome because of the fact that plaintiff was an innocent third party. Plaintiff argues that in light of the fact that the insurer issued a policy for a coverage period commencing before its actual receipt of Rome's insurance application; that the insurer should be estopped from denying coverage on the theory that it would still have issued such a policy even if it had adequate time to investigate the application.
Plaintiff cites the Maryland case of Reserve Insurance Co. v. Duckett, 240 Md. 591, 214 A.2d 754 (Ct.App.Md.1965) for the contention that the doctrine of either apparent authority or estoppel can be applied in an appropriate case where the broker's authority to bind the insurer is involved. However, the doctrine espoused in this Maryland case is inapplicable to the case at hand because Baggett was not an agent with the authority to bind the insurer, nor can it be said that the impression was given that he had such power. Additionally, that case dealt only with the rights of the insured who dealt directly with the agent or broker and relied on the actions or manifestations of that person, not with the rights of an accident victim against the named insured and his insurer.
No Louisiana jurisprudence has been cited where this doctrine has been applied to estop insurers from denying coverage except where the case involved an actual agent of the insurer who had knowledge of the misrepresentations by the applicants or had reasonable opportunity to learn of them. We therefore find no merit to this assignment of error.

*253 DEFENDANT-INSURER'S ASSIGNMENT OF ERROR
Defendant-insurer on appeal alleges that the trial court erred in assessing all court costs against it, when the court at the same time dismissed plaintiff's suit against it.
LSA-C.C.P. Art. 1920 provides that the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. The trial court is vested with great discretion in determining who is liable for costs of court and also in apportioning costs of court as it deems equitable, though this discretion is not unbounded. American Deposit Ins. Co. v. Walker, 450 So.2d 33 (La.App. 3rd Cir.1984).
After careful review of the record in this case, we find that it was inequitable for the trial court to assess the costs of court against the insurer in light of the fact that the trial court's judgment totally absolved the insurer from all liability under the fraudulently obtained insurance policy and voided the policy ab initio. We therefore reverse and set aside the portion of the trial court judgment casting the insurer for costs of the trial and granting judgment for those costs on the insurer's third party demand in favor of the insurer and against Richard B. Baggett. Judgment is now entered taxing all costs of the proceedings in the trial court against the plaintiff-appellant.
For the foregoing reasons we affirm the judgment of the trial court in part, amend the judgment of the trial court as to the taxation of costs on the main demand, reverse the judgment of the trial court as to taxation of costs on the third party demand, and render judgment.
All costs of this appeal are taxed to the plaintiff-appellant.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART, AND RENDERED.