IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-30081

Summary Calendar
_____

PACIFIC INSURANCE COMPANY, LIMITED

Plaintiff - Appellee

v.

LOUISIANA AUTOMOBILE DEALERS ASSOCIATION

Defendant - Cross Defendant - Appellant

and

ROBERT C ISRAEL

Defendant - Appellant

v.

BILL WATSON FORD INC; WATSON INVESTMENT INC; BILL WATSON
NISSAN INC

Defendants - Cross Claimants - Appellees

_____

Appeals from the United States District Court
for the Middle District of Louisiana
No. 97-CV-676
_____

August 3, 2001

Before KING, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PER CURIAM:*

_____

        *    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent

Defendants-Appellants Louisiana Automobile Dealers Association and Robert C. Israel appeal from the district court's order granting summary judgment in favor of Plaintiff-Appellee Pacific Insurance Company and rescinding two insurance policies. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Between 1993 and 1997, Plaintiff-Appellee Pacific Insurance Company ("Pacific") issued four insurance policies (collectively, the Policies") to the Defendant-Appellant Louisiana Automobile Dealers Association ("LADA") covering "Trustees Errors and Omissions Insurance plus Directors and Officers Liability for Associations with Self Insurance Funds." The original policy (the "1993-1994 Policy"), which was effective from September 15, 1993 to September 15, 1994, was renewed three times (the renewal policies are hereinafter referred to, respectively, as the "1994-1995 Policy," the "1995-1996 Policy," and the "1996-1997 Policy"). Relevant to our analysis, each application for renewal of a Policy asked, inter alia, the following two questions: (1) "During the last 5 years, has any claim been made, or is any claim now pending, against the Association, it's [sic] Directors/Trustees or Officers?" and (2) "Is the Association aware of any circumstances or any allegations or contentions which may result in a claim being made against the Association or

_____

except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

any of its past or present Directors, Officers, Trustees or Employees?"  Furthermore, each application stated: "Signing this application does not bind the Underwriters to provide this insurance, but it is agreed that this application shall be made a part of this certificate and shall be the basis of the contract should the certificate be issued."  On each application for renewal, "No" was checked in response to these questions, and each application was signed by Defendant-Appellant Robert C. Israel in his role as Executive Vice President of LADA.[1]

Meanwhile, on July 14, 1994, a class action complaint, "Alfred Ghoram, Eva Faye Agnelly, and All Others Similarly Situated Versus Louisiana Automobile Dealers Association, Inc., Spinato-Chrysler-Plymouth, Inc., Marshall Bros. Lincoln-Mercury, Inc., and All Others Similarly Situated" ("the Ghoram suit"), was filed in Louisiana state court alleging that LADA and other defendants had improperly passed an ad valorem tax on to consumers who had purchased automobiles from the defendants.  A similar class action complaint, "Billy Cook and Barry Kuperman Versus Powell Buick, Inc., Hub City Ford, Inc., and Louisiana Automobile Dealers Association, Inc." ("the Cook suit"), was filed in federal district court on September 20, 1994.  Neither

---

[1]  The 1994-1995 Policy, the 1995-1996 Policy, and the 1996-1997 Policy were signed by Israel on July 18, 1994; July 25, 1995; and July 25, 1996 respectively.  The renewal forms were actually filled out by Milda Porter, LADA's bookkeeper, under the direction of Israel.  Porter testified that Israel told her to answer "No" to both of the questions.

of the complaints specifically named any past or present officer or director of LADA as a defendant, nor was either complaint ever amended to do so.[2]  Discovery on the merits in these lawsuits began in the late spring or early summer of 1996, and as part of discovery, the depositions of several past presidents of LADA and the deposition of Israel were taken.[3]  During the course of those depositions, the plaintiffs' counsel offered that it was likely that past presidents would be included individually in the lawsuits.  On November 8, 1996, counsel for LADA notified Pacific of that possibility by letter.  The parties to the lawsuits decided to resolve their disputes by mediation.  Pacific did not participate in the mediation or contribute to the defense or settlement of the Cook or Ghoram suits.  A settlement agreement was eventually reached, which included a release by the plaintiffs of all claims contained in both the Cook and Ghoram suits against LADA and its directors and officers.

On July 9, 1997, Pacific filed suit against LADA in federal district court seeking a declaratory judgment that Pacific had no liability to LADA or any other insureds under the Policies for

_____

[2]  According to the affidavit of Claude Reynaud, an attorney at the firm hired to represent LADA in the Ghoram and Cook suits, the plaintiffs and the defendants in those suits informally agreed to pursue the litigation in the Cook suit. While this agreement may have been informal, we note that the Ghoram plaintiffs did formally intervene in the Cook suit.

[3]  Israel was deposed on July 14, 1995, and on August 23, 1995.

4

any costs of defense or indemnity for the claims presented in the Cook and Ghoram suits and seeking to rescind ab initio the 1996-1997 Policy. On August 28, 1997, Pacific amended its complaint to add Israel as a codefendant.[4]

On September 5, 1997, LADA and Israel answered Pacific's complaint and filed a counterclaim against Pacific alleging that Pacific had a duty to defend, indemnify, and reimburse LADA and its directors, officers, trustees, and members for the costs and expenses related to the Cook and Ghoram suits. LADA and Israel alleged further that Pacific was liable for breach of contract, bad faith, and unfair trade, insurance, and claim settlement practices.[5]

---

[4] Pacific also added Watson Investment, Inc., Bill Watson Ford, Inc., and Bill Watson Nissan, Inc., two automobile dealerships and their parent corporation (hereinafter referred to collectively as "Watson"), as codefendants on August 28, 1997. Although Watson has been a party to this suit since that date, it did not file an Appellee's brief in this appeal. It was notified of its failure to do so on April 30, 2001, and has not responded to that notification. For that reason, we find that we need not include a recitation of the various counterclaims, cross-claims, and motions for summary judgment involving Watson.

We do note, however, that on May 24, 2000, the district court granted Pacific's summary judgment motion against Watson, finding in part that the 1995-1996 Policy was subject to rescission under Louisiana Revised Statute § 22:619. Although § 22:619 is the statute at issue in this appeal as well, this particular motion for summary judgment was filed against only Watson, and the district court's judgment was not appealed.

[5] On October 10, 1997, LADA and Israel filed a Motion to Dismiss or, in the Alternative, to Stay on the Grounds of Abstention, which was denied by the district court on June 11, 1998.

On September 29, 1999, Pacific moved for partial summary judgment against LADA and Israel.  Pacific asserted that the Policies required as a condition precedent of coverage that LADA notify Pacific in writing of any claims filed against LADA. Pacific contended that, because the uncontested material facts showed that LADA failed to notify Pacific timely of claims filed against LADA, coverage was barred as a matter of law under the plain language of the contract.  Pacific sought partial summary judgment (i.e., a finding that LADA did not have coverage for claims made against it in the Ghoram and Cook suits and a dismissal of LADA's and Israel's counterclaims against it).  On November 29, 1999, the district court granted Pacific's motion for partial summary judgment, entered a declaratory judgment in favor of Pacific finding that Pacific had no obligation to LADA or its officers and directors regarding defense costs or indemnification of claims arising out of the Ghoram and Cook suits, and dismissed LADA's and Israel's counterclaims with prejudice.

On January 7, 2000, the district court certified the November 29, 1999 judgment as final.  LADA and Israel appealed the judgment, which was affirmed by this court on July 12, 2000. See Pac. Ins. Co. v. La. Auto. Dealers Ass'n, Inc., 226 F.3d 643 (5th Cir. 2000) (table decision).

Relevant to this appeal, Pacific moved for summary judgment on the remainder of its claims against LADA and Israel on July

6

11, 2000. Pacific sought to rescind the 1995-1996 and the 1996-1997 Policies based on material misrepresentations made in the renewal applications. Pacific asserted that the circumstances surrounding the signing and submission of the applications for the 1995-1996 and the 1996-1997 Policies established that LADA and Israel had made material misrepresentations with the intent to deceive, and therefore, those Policies were subject to rescission under Louisiana Revised Statute § 22:619. Specifically, Israel signed the respective renewal applications on July 25, 1995, and July 25, 1996 stating (1) that no claim was pending or had been made in the last five years against LADA or its directors or officers and (2) that LADA was not aware "of any circumstance or any allegations or contentions which [might] result in a claim being made against the Association or any of its past or present Directors, Officers, Trustees or Employees," even though the Ghoram and Cook suits had been filed in 1994 and extensive discovery had occurred, including the depositions of Israel and LADA's former general counsel. Further, Pacific noted that Claude Reynaud, an attorney at the firm retained by LADA to defend it in the Cook and Ghoram suits, stated that as early as late spring or early summer of 1996, when the depositions of its past presidents were taken, LADA was informed that claims would likely be made against its officers.

LADA and Israel argued to the district court that genuine issues of material fact existed as to whether the statements were

7

made with an intent to deceive. Specifically, LADA and Israel asserted that Israel had instructed Milda Porter, LADA's bookkeeper, to answer "No" to the claims questions because Israel believed that a loss had to be sustained by LADA before it needed to be reported as a "claim" in the insurance renewal application. LADA and Israel contended that, although Israel may have been incorrect in his assumption, his testimony established that he did not make a materially false statement to Pacific with the intent to deceive.

On August 2, 2000, the district court granted summary judgment in favor of Pacific and rescinded the 1995-1996 and the 1996-1997 Policies. The court noted first that LADA and Israel did not contest that Israel's misrepresentations were material; therefore, the district court adopted its prior ruling regarding the materiality of the statements as the law of the case. Regarding "intent to deceive," the district court found that even if it accepted as true Israel's assertion — that he believed a "claim" did not exist against LADA until it had suffered a loss — Israel could not deny that the suits were, at a minimum, "circumstances," "allegations," or "contentions" that may result in a claim. The district court concluded that the only reasonable assumption that could be drawn from Israel's execution of the renewal applications was, therefore, that he recognized the materiality of the misrepresentations and that he intended to deceive Pacific.

8

LADA and Israel timely appeal.


## II. STANDARD OF REVIEW

We review de novo the district court's grant of a motion for summary judgment, applying the same standard of review as the district court.  See Martinez v. Bally's La., Inc., 244 F.3d 474, 476 (5th Cir. 2001).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Evans v. City of Houston, 246 F.3d 344, 347-48 (5th Cir. 2001) (quoting FED. R. CIV. P. 56(c)).

"The movant has the burden of showing that there is no genuine issue of [material] fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case.").  If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

This court considers the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant. See Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 365 (5th Cir. 2000).

### III. ANALYSIS

LADA and Israel argue that the district court erred in granting summary judgment in favor of Pacific because Pacific did not prove that LADA or Israel made material misrepresentations on the renewal applications with the intent to deceive Pacific. Specifically, they assert that because Israel testified that he did not believe a claim existed until there was an actual loss and because, at the time Israel completed the applications, no such loss had occurred in either the Ghoram or Cook suits, there is a genuine issue of material fact regarding whether the materially false statements were made to Pacific with the intent to deceive. They contend that the only evidence offered by Pacific is the applications themselves, which merely demonstrate Israel's error in judgment, not any intent to deceive.

Pacific, by contrast, avers that the circumstances surrounding the completion of the renewal applications confirm that LADA and Israel made material misrepresentations with the intent to deceive, and therefore, the policies may be voided ab initio. Pacific contends that not only were the lawsuits

10

indisputably "claims" when the renewal applications were submitted, but also that, even if Israel believed that lawsuits did not become claims until a loss had been sustained, he must have been aware that the lawsuits could result in a claim, and therefore, his negative answer to that question shows his intent to deceive.

Under Louisiana law, an insurance provider can avoid a liability insurance contract if an oral or written material misrepresentation was made by or on behalf of the insured in negotiating the insurance contract, and if the material misrepresentation was made with the intent to deceive. See LA. REV. STAT. ANN. § 22:619 (West 1995)[6]; Darby v. Safeco Ins. Co. of Am., 545 So. 2d 1022, 1025-26 (La. 1989); see also FDIC v. Duffy,

---

[6] Louisiana Revised Statutes § 22:619 provides:

A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

LA. REV. STAT. ANN. § 22:619 (West 1995).

11

47 F.3d 146, 151 (5th Cir. 1995) ("Under Louisiana law, an insurance policy is null from its inception if a material 'oral or written misrepresentation or warranty [is] made in the negotiation of an insurance contract, by the insured in his behalf . . . [if] the misrepresentation or warranty is made with the intent to deceive.'" (alterations in original) (quoting Mazur v. Gaudet, 826 F. Supp. 188, 193 (E.D. La. 1992))); Breaux v. Bene, 95-1004 (La. App. 1 Cir. 12/15/95), 664 So. 2d 1377, 1380.

The insurer has the burden of proving both that the insured misrepresented a material fact and that he did so with the intent to deceive. See Darby, 545 So. 2d at 1026; Cousin v. Page, 372 So. 2d 1231, 1233 (La. 1979); see also Wohlman v. Paul Revere Life Ins. Co., 980 F.2d 283, 285-86 (5th Cir. 1992). On appeal, LADA and Israel do not challenge the district court's finding that the misrepresentations were material, only that they were made with the intent to deceive.

We recognize that cases which turn on state of mind are rarely appropriate for summary judgment. See Guillory v. Domtar Indus. Inc. v. John Deere Co., 95 F.3d 1320, 1326 (5th Cir. 1996) ("[S]ummary judgment is rarely proper when an issue of intent is involved."); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 956 n. 3 (5th Cir. 1993) ("[W]hen state of mind is at issue, summary judgment is less fashionable because motive or intent is inherently a question of fact which turns on credibility."); Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993)

12

("We are not unmindful of the fact that cases which turn on state of mind are often inappropriate for resolution at the summary judgment stage."); Pryor v. State Farm Mut. Ins. Co., No. 95-187 (La. App. 3 Cir. 8/30/95), 663 So. 2d 112, 114 ("[A] motion for summary judgment ' . . . is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith.'" (quoting Penalber v. Blount, 550 So. 2d 577, 583 (La. 1989))).

However, "the presence of an intent issue does not preclude summary judgment: the case must be evaluated like any other to determine whether a genuine issue of material fact exists." Guillory, 95 F.3d at 1326; Bodenheimer, 5 F.3d at 956 n.3; Pryor, 663 So. 2d at 114 ("[E]ven though the granting of a summary judgment based on an intent, malice or good faith issue may be rare, it can be done when there is no issue of material fact concerning the pertinent intent, malice, or good faith. Accordingly, when the evidence submitted on the motion leaves no relevant, genuine issue of fact, and when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court, a motion for summary judgment should be granted." (citations omitted)).

Because summary judgment is not well suited to cases involving state of mind,

> the court must be vigilant to draw every reasonable
> inference from the evidence in the record in a light
> most flattering to the nonmoving party.  Summary

13

judgment, to be sure, may be appropriate, "[e]ven in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."

Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1266 (5th Cir. 1991) (alterations in original) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)); see also Guillory, 95 F.3d at 1326.

Courts in Louisiana allow an insurer to carry its burden of proof on the issue of intent to deceive based on an examination of the surrounding circumstances. See Coregis Ins. Co. v. Bell, No. CIV. A. 96-2502, 1997 WL 335594, at *3 (E.D. La. June 17, 1997).

> Because of the difficulties inherent in proving that a person acted with the intent to deceive, the courts have lightened somewhat the insurer's burden by considering the surrounding circumstances in determining whether the insured knew that representations made to the insurer were false: Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality.

Darby, 545 So. 2d at 1026 (internal quotations omitted) (quoting Cousin, 372 So. 2d at 1233); see also Breaux, 664 So. 2d at 1380 (using surrounding circumstances to determine existence of intent to deceive on summary judgment); Pryor, 663 So. 2d at 114 (same).

LADA and Israel suggest that Israel's deposition testimony creates an issue of material fact as to whether the

14

misrepresentations were made with the intent to deceive, thus precluding summary judgment. We disagree. Israel testified at his deposition:

> I'm not an expert in the field of insurance and I would interpret that as a claims pending to be -- you know, my experience with insurance quite frankly is more in the area of automobile accidents or liability or something like that.
>
> And to me, a claims pending would be a claim, a loss. And the claim -- the only one I have ever filed for in my experience with insurance has been an automobile accident, or I had a flood in my house at one time. And I believe that, you know, it has always been my assumption that you had to have a loss before you could file a claim.
>
> Since then I have -- it's become clear to me that, you know, the whole area of defense is something that we are here at issue about, but that was not my specific knowledge or understanding.
>
> It just didn't come into my thought process, about applying for defense. And what I understood is, as long as -- as long as this case was open and being litigated and had not -- there had been no claim against LADA, we had no loss and thereby there was no claim to make to you. Because if we are innocent in the claim, we had no loss and there wouldn't be a claim.

This excerpt of Israel's deposition testimony does not reveal a material question of fact such that summary judgment would be precluded.

In addition to asking whether any claim had been made or was pending against LADA or its Directors, Trustees, or Officers, the renewal applications ask: "Is the Association aware of <u>any circumstances or any allegations or contentions which may result in a claim being made</u> against the association or any of its past or present Directors, Officers, Trustees or Employees?" We hold

15

that the circumstances surrounding Israel's negative answer to this question on the renewal applications indicate his "'knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations,'" Darby, 545 So. 2d at 1026 (quoting Cousin, 372 So. 2d at 1233), or, at a minimum, indicate "'circumstances which create a reasonable assumption that the insured recognized the materiality.'"  Id. (quoting Cousin, 372 So. 2d at 1233).

This conclusion is based on the following facts.  Israel signed the renewal form for the 1995-1996 Policy on July 25, 1995.  At that time, Israel knew that two lawsuits had been filed against LADA in 1994.  He himself had been deposed regarding the Cook suit a mere eleven days before he signed the renewal form.  Although Israel stated that he believed that a claim did not exist until a judgment was entered against a party, he also testified that he considered the Cook suit to be a "charge," a "complaint," an "assertion," or an "allegation."  Additionally, Israel admitted that the inventory-tax (i.e., the ad valorem tax) issue was the overriding legal issue facing LADA.  Finally, Reynaud stated that it was during the depositions of the past presidents of LADA for the Cook suit, which occurred in the late spring or early summer of 1996, that "plaintiff's counsel offered that it was likely that these past presidents would be included in the lawsuit individually."

16

All of the above "surrounding circumstances" were also present at the time Israel signed the renewal application for the 1996-1997 Policy. Additionally, by the time he signed this renewal application, Israel had been deposed for the Cook suit a second time on August 23, 1995.

Israel himself noted that, while he did not consider the lawsuits to be "claims," they could be referred to as "allegations." The surrounding circumstances support as a matter of law that Israel recognized the materiality of the misrepresentation. Therefore, we agree with the district court that Israel made material misrepresentations with the intent to deceive and that Pacific is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

17