633 So.2d 263 (1993)
Donna PERAULT[1],
v.
TIME INSURANCE COMPANY.
No. 92 CA 2115.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Writ Denied February 11, 1994.
*264 Arthur Cobb, Baton Rouge, for plaintiff-appellant Donna Perault.
Edwin W. Fleshman, Baton Rouge, for defendant-appellant Time Ins. Co.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Donna Perreault (plaintiff) filed this lawsuit against Time Insurance Company (defendant) to recover benefits under her health insurance policy for treatment of a thyroid condition. The trial court awarded plaintiff $11,470.20 in medical costs and denied attorney fees and penalties. Defendant appealed the award and plaintiff appealed the denial of fees and penalties.

A. Facts
Plaintiff went to see Dr. Robert P. St. Amant in April 1987 for a routine gynecological examination. St. Amant found a small nodule on her thyroid. The parties do not dispute that St. Amant informed plaintiff the nodule existed. His records and testimony show he recommended a thyroid scan with uptake to further diagnose the significance of the lump. St. Amant's records from the visit also show plaintiff told him she was not sure whether her insurance at that time would pay for the procedure. St. Amant did not recall and his records do not reflect further discussion of the lump. Seven months later, in November 1987, plaintiff saw Dr. J. Walden at the L.S.U. Infirmary, complaining of fatigue, weakness, and headaches. His examination did not show anything abnormal.
In August 1988, plaintiff bought health insurance from defendant. Prior to obtaining the policy, she was required by defendant to fill out an application for insurance containing questions relating to prior medical treatment and her past and present health. Two questions on the application are pertinent to this case:
Within the last 10 years, has any person to be insured:
15. Had any diagnosis, or treatment of:
....

*265 g) Diabetes, high or low blood sugar or any disorder of the thyroid gland, breast or other glandular disorder?
....
i) Cancer, tumor, cyst or growth of any kind; including breast or skin disorders?
Plaintiff answered "no" to both of these questions.
In March 1989, plaintiff saw St. Amant again for a routine gynecological exam. In the regular course of the exam, he palpated her thyroid and found the nodule had grown. He made the appointment for a scan with uptake to test the lump further and referred her to a surgeon. In April 1989, plaintiff's thyroid was removed after the lump was diagnosed as malignant.
The trial court found plaintiff answered the questions on the application to the best of her knowledge. In oral reasons, the trial court found the pre-existing condition definition in the policy was ambiguous and the defendant failed to carry its burden of establishing the ultimate condition was a pre-existing condition.

B. Disclosure
St. Amant clearly informed plaintiff she had a nodule on her thyroid in 1987. It is conceivable that plaintiff did not consider herself "diagnosed" with a thyroid or glandular "disorder." Follow-up was left entirely to her own discretion, and the record shows little discussion at the time of the 1987 routine exam. She had not experienced any symptoms which indicated she was not perfectly healthy. St. Amant confirmed in his deposition that plaintiff exhibited no symptoms which indicated her thyroid was not functioning normally. Plaintiff also saw Walden at the L.S.U. Infirmary in November 1987, six months later. The blood workup and his examination showed nothing out of the ordinary. The trial court was not clearly wrong finding plaintiff properly answered question 15(g) "No." Nothing in the record indicates the nodule was diagnosed as a thyroid or glandular disorder and treatment was left entirely up to plaintiff's discretion.
Question 15(i), however, asks whether the person to be insured has been diagnosed or treated for any cyst or growth of any kind. Plaintiff was informed in 1987 the nodule existed. Her choice not to seek treatment or more information, for whatever reason, does not negate the fact that St. Amant found the nodule and informed her of its existence. Plaintiff was diagnosed with a growth by St. Amant in 1987, which would have required her to answer "yes" to this question and provide an explanation that no further evaluation was performed. She was also free to provide further explanation of the diagnosis, which may have included the later visit to the infirmary. Plaintiff clearly made a false statement in her application for insurance. She was diagnosed with a growth in 1987, and she failed to disclose this fact in her application.

C. Louisiana Revised Statute 22:619
Plaintiff argues that for the insurance company to avoid coverage, the company must carry the burden of proving a false statement was made with intent to deceive, as required by Louisiana Revised Statute 22:619 (1993), which provides:
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
The statute provides that a false statement bars recovery only if the insurer proves it is made with the intent to deceive or if it materially affects the risk. The jurisprudence *266 interpreting this statute places the burden of proof upon the insurer. This court has recognized that even though the statutory language is "or," Louisiana jurisprudence requires proof of both factors. Ragan v. Pilgrim Life Ins. Co. of America, 461 So.2d 618 (La.App. 1st Cir.1984), writ denied, 464 So.2d 315 (La.1985); Antill v. Time Ins. Co., 460 So.2d 677 (La.App. 1st Cir.1984). The supreme court has sanctioned this approach. Coleman v. Occidental Life Ins. Co. of N.C., 418 So.2d 645 (La.1982); Benton Casing Service, Inc. v. Avemco Ins. Co., 379 So.2d 225 (La.1979).
The difficulty of proving intent to deceive is recognized by the courts; thus the courts look to the surrounding circumstances indicating the insured's knowledge of the falsity of the representation made in the application and his recognition of the materiality of his misrepresentations, or to circumstances which create a reasonable assumption that the insured recognized the materiality. Jamshidi v. Shelter Mutual Ins. Co., 471 So.2d 1141, 1143 (La.App. 3d Cir.1985); Davis v. State Farm Mut. Auto. Ins. Co., 415 So.2d 501 (La.App. 1st Cir.1982).
The trial court found defendant did not carry its burden of proving these elements such that plaintiff's false statement met the legal standard required by Revised Statute 22:619 and its interpreting jurisprudence to void coverage. We agree.
Anti-technical statutes such as Revised Statute 22:619 have been enacted to preclude an insurer from denying coverage by use of complex policy provisions concerning facts the untutored insured would find relevant to his coverage. Benton Casing Service, Inc., 379 So.2d at 227.
The trial court, based on the entire record and all of the circumstances, could not find an intent to deceive. The trial court was not clearly wrong. St. Amant told plaintiff she had a growth during the initial visit, but all follow-up was left up to plaintiff. Discussion of the lump and its possible significance was minimal. Given her admitted family history of breast cancer, plaintiff was not likely to ignore the information had she thought it was of any significance. The examination she received seven months later at the infirmary turned up nothing unusual. Walden did not even feel the same nodule St. Amant found earlier. The record supports the finding that plaintiff had no intent to deceive.
Furthermore, if there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993).

D. The Pre-Existing Condition Language
An insurance policy is a contract, and the rules governing the interpretation of written agreements apply to insurance contracts. Hemel v. State Farm Mutual Automobile Ins. Co., 211 La. 95, 29 So.2d 483 (1947); Thibodeaux v. Doe, 602 So.2d 1076 (La.App. 1st Cir.), writ denied, 605 So.2d 1377 (La.1992). An insurance contract is the law between the parties, and every provision therein must be construed as written. Insurers may limit their liability, so long as the limitations are not in conflict with statutory provisions or public policy and so long as the limitations are unambiguous and easily understandable. Benton Casing Service, Inc., 379 So.2d at 227; Thibodeaux, 602 So.2d at 1078.
The pre-existing condition defense, unlike the misrepresentation defense, is a question of contract interpretation. Estate of Borer v. Louisiana Health Service & Indem. Co., 398 So.2d 1124 (La.1981).
The language in this contract reads:
PRE-EXISTING CONDITIONS: A Pre-existing Condition as used in this policy is a condition not fully disclosed on the application for insurance:
1) for which the Covered Person received medical treatment or advice from a physician within the 2 year period immediately preceding that Covered Person's Effective Date of Coverage; or
2) which manifested itself, or which produced symptoms within the 2 year period immediately preceding that Covered Person's Effective Date of Coverage, which would cause an ordinarily prudent person to seek diagnosis or treatment.

*267 Pre-existing conditions will be covered after the Covered Person has been insured for 2 years, if the condition is not specifically excluded from coverage.
The trial court found this language ambiguous. We do not find this language ambiguous. Insurance policies are construed as a whole, using the plain, ordinary, and popular sense of the language. Central Louisiana Electric Co. v. Westinghouse Elec. Co., 579 So.2d 981 (La.1991); Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988). Courts are not to strain to find ambiguity in insurance contracts. Watts v. Aetna Cas. & Sur. Co., 574 So.2d 364 (La. App. 1st Cir.), writ denied, 568 So.2d 1089 (La.1990).
The insurer clearly has a right to defend on the basis that coverage is excluded by the terms of the policy without regard to whether plaintiff misrepresented information. However, the plain terms of this policy say "a condition not fully disclosed on the application for insurance." Thus, the clause makes disclosure on the application a condition for excluding coverage on the basis of a pre-existing condition. The terms of the contract, therefore, require the court to interpret this provision in light of the statutory and jurisprudential requirements contained in Revised Statute 22:619. As discussed above, the trial court found no intent to deceive, as required by Revised Statute 22:619. We will not disturb that finding.

E. The Retroactive Exclusionary Rider
Defendant finally asserts error in the trial court's determination that the retroactive exclusionary rider signed by plaintiff was invalid. Plaintiff signed an exclusionary rider for thyroid conditions to be applied retroactively to the date the policy was issued. The rider, which plaintiff received after her claims for the thyroid operation had been submitted, was sent to her by the insurance company with a letter offering to refund all paid premiums and cancel the policy if she chose not to sign. Plaintiff stated at trial she signed the rider to maintain her health insurance, but never intended to give up her prior claims. The trial court found execution of the rider was tantamount to a compromise, which was invalid for lack of cause.
Plaintiff's desire to maintain her health insurance policy with defendant is sufficient cause to support applying the rider to future claims. La.Civ.Code arts. 1966-1970. However, we agree with the trial court that the rider cannot be given retroactive effect.
Persons, by contract of transaction or compromise, may settle any difference they may have that is the subject of a lawsuit or that could result in litigation. La. Civ.Code arts. 3071, 3073, 3083; Daigle v. Clemco Industries, 613 So.2d 619 (La.1993). A compromise agreement requires no other cause or consideration than an adjustment of differences and avoidance of litigation. Dornier v. Live Oak Arabians, Inc., 602 So.2d 743 (La.App. 1st Cir.), writ denied, 608 So.2d 177 (La.1992).
Plaintiff already had incurred substantial expenses for the thyroid operation. She had a valid dispute with defendants over payment of those claims. Plaintiff received the benefit of maintaining her health policy in exchange for her agreement to exclude any future claims related to her thyroid. Defendant would receive the benefit of plaintiff releasing the medical claims, but plaintiff would not receive any corresponding benefit. Defendant's offer to refund all of the money plaintiff had paid was insufficient to support release of her claims. She stated at trial she felt compelled to maintain the policy because she had just incurred significant medical bills due to an unexpected condition and did not want to be without insurance. While this desire may have been sufficient cause for agreeing to relinquish coverage for any future thyroid-related claims, it was insufficient cause to support compromise of approximately $13,000.00 in already submitted claims.
Furthermore, the record supports plaintiff's testimony that she did not intend to compromise the claims she already submitted, even though she was aware defendant intended to apply the rider retroactively. A compromise is valid only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. Tarver v. Oliver H. *268 Van Horn Co., 591 So.2d 1366 (La.App. 4th Cir.1991), writ denied, 594 So.2d 891 (La. 1992). A compromise must be by mutual consent and must be reduced to writing and be unambiguous. Flowers v. U.S. Fidelity & Guar. Co., 367 So.2d 107 (La.App. 4th Cir.), aff'd in part, amended, and remanded on other grounds, 381 So.2d 378 (La.1979). The exclusionary rider and accompanying letter were not sufficiently clear to exclude the claims over which plaintiff and defendant had a dispute.

F. Proof of Damages
Defendant's final assignment is that the trial court committed error by awarding plaintiff damages when she failed to prove the amount of her medical bills and the amount paid by her other insurer. Plaintiff claims her medical costs totaled $13,470.20.[2]
Plaintiff at trial argued defendant possessed plaintiff's medical bills, which were submitted when the claims were made, and that defendant could put the bills in evidence to verify the amount. Defendant stated at trial that a total of $10,549.75 in bills had been received, not $13,000.00. The record does not contain the bills or any other proof of damages. We take defendant's statement at trial as a judicial confession that plaintiff had $10,549.75 in bills.[3] There is no evidence in the record that another health plan made any payments and the deductible on her policy was $1,000.00. The policy requires plaintiff to pay 20% of the first $5,000.00; therefore, we deduct a total of $2,000.00 from plaintiff's bills of $10,549.75, which results in a judgment of $8,549.75.

G. Attorney Fees and Penalties
The trial court found defendant was not arbitrary and capricious in denying plaintiff's claim. The record supports the trial judge's finding.

H. Conclusion
Accordingly, based on the foregoing reasons, the decision of the trial court casting defendant with damages is affirmed as amended. Plaintiff is awarded $8,549.75, together with legal interest thereon from date of judicial demand until paid. Defendant is cast with all costs of this appeal.
AMENDED AND AS AMENDED AFFIRMED.
NOTES
[1] Plaintiff's last name is incorrectly spelled in the caption and throughout the record. The correct spelling appears to be "Perreault," as shown on her application for insurance and on an affidavit in the record, both signed by her.
[2] The trial judge apparently deducted the $1,000.00 deductible from the $13,470.20, and then of the remainder, calculated the rate of payment as being 80% of the first $5,000.00 and 100% of the remainder according to the policy. This calculation produces $11,470.20, and shows why the trial judge deducted a total of $2,000.00.
[3] A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. La.Civ.Code art. 1853.