664 So.2d 1377 (1995)
Melissa R. BREAUX, et al.
v.
Donald A. BENE, Sr., et al.
No. 95 CA 1004.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
*1378 Christopher H. Riviere, Thibodaux, for Plaintiffs-1st Appellants, Melissa Breaux & Kent J. Breaux.
Eugene G. Gouaux, Jr., Lockport, for Defendant-2nd Appellant, Donald A. Bene, Sr.
William P. Golden, Jr., LaPlace, for Cross-Claimant ANA Insurance Group and Louisiana Insurance Guaranty Association.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
HILLARY J. CRAIN, Judge Pro Tem.
This is an appeal from a summary judgment in favor of the Louisiana Insurance Guaranty Association (LIGA) dismissing LIGA from this action.

FACTS
On January 17, 1992, an automobile liability insurance application was completed on behalf of Donald Bene, Sr. The insurance application was taken by A.J. Rabalais, a licensed insurance broker, through the CLI Insurance Agency which represented, among others, the ANA Insurance Group.
Listed as operators of the two Bene vehicles in the application were Donald Bene, Sr. and his wife, Linda Bene. Included in the application was the question: "Are any persons age 25 or under who live in your household not listed above?" The "No" response was checked off. The application also contained a section which read as follows:

"APPLICANT'S STATEMENT-READ BEFORE SIGNING
The applicant hereto states that he has read this application and attests that the above information is accurate and truthful to the best of his knowledge and belief and that said information was made available as inducement to the Carrier to issue an *1379 insurance policy. The Applicant also states that all operators of the above vehicles are listed on this application and that all household members under Twenty-Five (25) years of age are also listed on this application. The Applicant also understands that any policy issued as a result of this information may be declared NULL and VOID and of no benefit or effect whatsoever in the event the attestations or statements in this application are found to be false or fraudulent in nature."
The policy period was from January 17, 1992, to July 17, 1992, effective January 16, 1992.
On January 27, 1992, Donald Bene, Jr., age 17, was driving his father's 1977 Chevrolet Impala and struck a vehicle, driven by Melissa Breaux, from the rear. Donald Bene, Jr. was a resident of his parents household all of his life, including the time of the insurance application and the time of the accident. He was a high school student at the time of the accident and had obtained his driver's license approximately six months prior to the completion of the insurance application of January 17, 1992. It is undisputed that at the time of the accident, Donald, Jr. was driving his father's car with his father's permission. It is also undisputed that Mr. Bene, Sr. allowed his son to drive the car occasionally prior to and subsequent to the insurance application.
Mrs. Breaux and her husband Kent J. Breaux filed this personal injury action against Donald Bene, Sr., individually, and on behalf of his minor son, Donald Bene, Jr. Additional defendants were ANA Insurance Group, the Benes' insurer and Allstate Insurance Company, the UM insurer of the Breauxs. Allstate filed a cross-claim against Donald Bene, Jr. and Donald Bene, Sr., as well as ANA Insurance Group. ANA subsequently went into receivership and LIGA was substituted as a party defendant. LIGA filed a motion for summary judgment, seeking dismissal of LIGA from this action because of the alleged misrepresentation in the insurance application that there were only two drivers in the household. After a hearing on the motion, the trial court rendered summary judgment in favor of LIGA, dismissing LIGA from this action. Plaintiffs and Donald Bene, Sr. have appealed, each alleging two assignments of error: (1) the trial court's choice between the competing public policies underlying La.R.S. 22:619 and 32:900; and (2) the existence of a material issue of fact in the trial court's determination that Mr. Bene intended to deceive the insurer in omitting to list Donald Bene, Jr. in the insurance application as an occasional operator of the vehicle.

SUMMARY JUDGMENT
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. A fact is material if it may potentially ensure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of the legal dispute. Penalber v. Blount, 550 So.2d 577 (La.1989). The mover has the burden of proving the absence of a genuine issue of material fact, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). Any doubt regarding the existence of a genuine issue of material fact should result in denial of the motion for summary judgment and in favor of trial on the merits, regardless of doubt of the opponent's ability to establish the disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068 (La.App. 3d Cir.1985).
The standard of review for a summary judgment is de novo review using the same criteria which the trial court must use to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730.

*1380 ANALYSIS

Subsection A of section 619 of Title 22 of the Louisiana Revised Statutes governing warranties and misrepresentations in negotiations or applications of insurance contracts provides in part:
"[N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive."
Pursuant to the statutory language, a false statement or misrepresentation voids the contract only if the insurer proves it is made with the intent to deceive or if it materially affects the risk. In interpreting this statute, the jurisprudence has placed the burden of proof on the insurer, and both factors (materiality and intent to deceive) must be proved. Coleman v. Occidental Life Insurance Co. of North Carolina, 418 So.2d 645 (La.1982); Perault v. Time Insurance Co., 633 So.2d 263 (La.App. 1st Cir.1993), writs denied, 93-3133 (La. 2/11/94), 634 So.2d 833 and 93-3156 (La. 2/11/94), 634 So.2d 834.
In determining the applicant's intent to deceive, "the courts look to the surrounding circumstances indicating the insured's knowledge of the falsity of the representation made in the application and his recognition of the materiality of his misrepresentations, or to circumstances which create a reasonable assumption that the insured recognized the materiality." Perault v. Time Insurance Co., 633 So.2d at 266. Intent to deceive is a factual determination which should not be set aside absent manifest error. Id.
A misrepresentation is material if the insurer would not have issued the policy had the misrepresentation not been made. If the information given by the applicant was false and the insurance company would have issued the policy anyway, the misrepresentation is not material. Davis v. State Farm Mutual Automobile Insurance Co., 415 So.2d 501 (La.App. 1st Cir.1982). There is no dispute that Mr. Bene, Sr.'s failure to list in the application his seventeen year old son, who is a member of the household, is licensed to drive, and drives occasionally with parental consent, was a material misrepresentation. However, unless the misrepresentation was made with the intent to deceive, the contract cannot be voided.
The deposition of Mr. Rabalais was considered by the trial court. Mr. Rabalais was queried as follows:
. . . . .
Q. Do you ask a prospective insured who is going to be driving the car?
A. Definitely. That's one of the first questions we ask, who owns the vehicle, and who is going to drive the vehicle.
Q. Do you remember, in this particular case, do you remember asking that question?
A. Yes, because we go over these questions here, and if you notice, at the bottom of the application, it says: Are any persons age 25 or under who live in your household not listed above?
And he said: No.
Q. Do you remember asking him that question?
A. Yes.
Q. His response was no. Do you feel like when you asked these questions, that he understood these questions?
A. Yes, because he told me he was a deputy for the parish of Lafourche at the time.
. . . . .
Q. In other words, you specifically asked him about underaged drivers?
A. Yes, because usually a person that age have [sic] teenagers. In the late thirties and all have teenagers.
Q. His response to you was that he was not going to have underage drivers?

*1381 A. No underage drivers.
Q. Or no one else driving the car except Donald and Linda, those listed on the policy?
A. That's correct, yes.
. . . . .
Q. Where this part here, the policy says: Applicant statement read before signing, do you recall reading that statement to Mr. Bene?
A. The bottom here?
Q. Yes.
A. I really don't know about that. I know we discussed the under 25. I like to make sure people understand that. If you have any teenagers and they are not on this policy, they are not covered; and if they are licensed, they have to be on the application. But according to him and the reason why I recall this so well is because a few days later, when he reported the accident, he came in very worried because he knew that the child was not on the policy.
. . . . .
Q. Is one of the questions you ask how many other licensed drivers are in the house?
A. Yes.
Q. At the time when Mr. Bene came in, did you-all have any discussion whether his son was, in fact, licensed or not?
A. No, I don't think that came up. He just said they were the only drivers.
Q. I understood, because earlier you stated something about if there was a licensed driver in the house, he would have to be on the application?
A. That's what the guidelines are. All licensed drivers in the household need to be listed on the policy.
. . . . .
Q. My question is, there is a question on there: Are there any individuals in the household who are not listed above? Would those names be put on a separate page, or on that application? ...
A. It's one page, right. In the event they say: Well, I do have a son or a daughter that lives in the house, but they have their own car, their own vehicle and their own insurance, in that case we have to sign an exclusion that he's excluded from that particular policy.
Q. Would that be a separate form?
A. That's a separate form.
Q. I understand that situation, when you have a member of the household that is insured with their own vehicle. What happens if there's a member in the house who is not insured, has their own vehicle and not insured, but not listed on that application?
A. They are required an exclusion saying that they will notin other words, they are not covered and they are not insured under this particular policy.
Q. That would have been forwarded with this application on a separate form?
A. I don't think he signed an exclusion on this one here because ANA has an underagethey had an underage app.
. . . . .
Q. Do you remember specifically if the questions between you and Mr. Bene were: Do you have any licensed drivers in the house, or do you have any other individuals in the house?
A. I remember him saying he had a teenaged son, but he didn't drive.
Q. That was the discussion you had?
A. Yes.
Q. Is there any reason why that teenage son wasn't listed in the application form?
A. Well, he said he didn't drive.
Q. So you didn't include him in the application?
A. If he didn't drive, with no license, no point in listing him.
. . . . .
*1382 Mr. Bene's deposition was also considered by the trial court. Mr. Bene explained that, at the time of the application, he had four children under age twenty-five who resided at home. The eldest child, a daughter, was not licensed to drive. Donald, Jr., the second child, was the only child who had a driver's license. When queried why he did not name Donald, Jr. as a household member or driver, Mr. Bene's answer was equivocal. However, he maintained that the omission was not intended to deceive, he merely forgot. His responses to the queries were as follows:
Q. And I'm going to show you the form here again. Do you remember being asked questions about who was in your family and who had a driver's license and who might drive the car on occasion?
A. Yeah. It was justI had just put me and my wife on it.
Q. So you just put you and your wife on the policy?
A. Yeah.
Q. And you didn't put your son on the policy?
A. No, I didn't put him on the policy.
Q. So it was not your intention to have him on the policy then?
A. No. Right. I didn'tI just didn't think about putting him on the policy at the time, okay, you know, because when I go to buy insurance, it's always just me and my wife, me and my wife, me and my wife, you know.
. . . . .
Q. So the answer to the question at that time, you did not have any persons under 25 who lived in your household; it was just you and your wife?
A. Uh-huh (affirmative response).
Q. But you didn't want to have your son Donald Bene, Junior on the policy, right?
A. Well, no, at the time I purchased that liability insurance, you know, it was just me and my wife. I didn't put anybody else on it.
Q. Why wouldn't you not want to put him on the policy if he had a driver's license and he drove your car on occasion?
A. I don't know. In other words, you know, I don't know why, at that time, I didn't put him on the policy, okay.
Q. Are you aware that if you put him on the policy as an under-age driver that your premium would be higher?
A. I didn't think about it at that time, you know, and in today's world that we live in, yeah, if youyou put a teenage driver on your insurance policy, your insurance is going to go up. I understand that, you know, but at the time that this insurance was purchased, like I said, you know
Q. Are your telling me that you understand that now, but you did not understand that then?
A. I understand what?
Q. That if you put a teenage driver on the policy, you have to pay a higher premium.
A. I probably did understand then.
Q. All right.
A. But what I'm saying is at the time that I bought this insurance, okay, I don't remember at that time, okay, why I didn't put him on the insurance or anything like that. It's just that over the years, okay, every time I go buy insurance, it's always been me and my wife, okay, and it just didn't maybe come to me at that time to put him on the policy when I purchased the insurance.
. . . . .
Although Mr. Bene's responses reveal equivocation on his part, the resolution of his intent to deceive in this insurance application requires a credibility determination, which is a factual issue to be determined by the trier of fact. This matter is not appropriately resolved by summary judgment. Jarrell v. *1383 Carter, 632 So.2d 321 (La.App. 1st Cir.1993), writ denied, 94-0700 (La. 4/29/94), 637 So.2d 467. Rather, it requires resolution by trial on the merits.
Accordingly, we reverse the summary judgment and remand for trial on the merits. LIGA is assessed for costs in accordance with law.
REVERSED AND REMANDED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.