|.i SULLIVAN, Judge.
This is a suit for life insurance benefits. Plaintiff-appellant, Lucille T. Hebert, appeals from the trial court’s judgment rendered in favor of defendant-appellee, Magnolia Life Insurance Company, which denied her claim as beneficiary under a life insurance policy purchased by, and issued to her son, Carlos Victoria. The trial court held that in applying for the policy, Victoria knowingly misrepresented his health status to Magnolia with the intent to deceive. Hebert contends the trial court erred in the following particulars, to-wit:
1) failing to impose the proper burden of proof on defendant;
2) finding that defendant proved the elements necessary to the material misrepresentation defense;
123) considering the contents of the policy application; and
4) failing to award penalties.
For the following reasons, we conclude that the trial court did not err in denying Hebert’s claim. Accordingly, we affirm.
FACTS
Victoria died on March 14, 1993, from Acquired Immune Deficiency Syndrome (AIDS). At issue in this case are the circumstances surrounding Victoria’s completion of Magnolia Life’s application for life insurance. On June 20,1991, Victoria, a resident of Fort Worth, Texas, was visiting his mother at her home in Cameron, Louisiana. Marie Miller, a salesperson representing Magnolia Life, arrived at the home and attempted for a second time to sell a life insurance policy to plaintiffs husband, Joseph Hebert. At the time, plaintiff was not present in the home. Her husband declined to purchase a policy, but his stepson, Victoria, agreed to fill out an application.
It is undisputed that Miller filled out the two page policy application as Victoria an *470 swered the questions she asked. The parties stipulated that she read aloud every question on the application and accurately recorded Victoria’s responses as they were made. Victoria then signed the application in Miller’s presence and Miller signed as a -witness. The policy applied for provided $10,000.00 in life insurance coverage.
Victoria answered “No” to the following questions on the application:
12. To the best of your knowledge and belief, has any person proposed for insurance, in the past ten years:
a. had or been told he had Acquired Immune Deficiency Syndrome (“AIDS”), AIDS Related Complex (“ARC”), or AIDS related conditions?
lab, received advice or treatment in connection with any of the categories mentioned in (a) above?
c. tested positive for antibodies to the AIDS (Human T-cell Lymphotrophic Type III; HTLV III) virus?
Hi * # * * He
14. Has any Proposed Insured, within the past 5 years, consulted or been attended or examined by any doctor or been in any hospital or other institution for treatment, diagnosis operation or checkup?
⅜ ⅜ ⅜ # ⅜
16. Has any Proposed Insured been advised to have any type of treatment or consultation which has not been completed?
Although Victoria answered “No” to all questions concerning his past medical history, he provided a response to question 20 (Explain “Yes” answers to questions above). In this, the final question, he added that, in 1990, he had taken a “checkup for job— everything OK.” Victoria gave Miller the first month’s premium of $22.60 for submission to Magnolia Life, which issued the life insurance policy to Victoria on July 1, 1991.
After his death, Victoria’s mother turned the policy over to the funeral home, which was not successful in collecting the benefits. Magnolia Life denied coverage because of medical records it obtained from the University of Texas Medical Branch. These records reflect, in hospital discharge summaries for 1991 and 1992, that Victoria was first diagnosed as HIV (Human Immunodeficiency Virus) positive in October, 1990.
Trial of this matter was held on February 2,1994. Joseph Hebert testified that, on the date Victoria filled out the application, he was not aware of any serious medical problems Victoria was experiencing. Victoria appeared to be healthy. After [4the application was completed, Victoria’s mother returned home and signed the application as beneficiary. According to Hebert, he did not know Victoria very well and conceded that Victoria was not one to confide with him about his private life. He did not know if Victoria knew he was sick at the time he completed the application.
Lucille Hebert also testified at trial. She stated that she signed as beneficiary on the application. When the policy arrived at her home, she put it in a safe deposit box at the Calcasieu Marine National Bank. She remembered Victoria calling her from Texas and informing her of his HIV positive status, but she could not recall when he did so. She also did not know when Victoria discovered that he was HIV positive.
Yvonne Kielmeyer, a Liberty Life Insurance Company employee who handles Magnolia Life death claims, stated that the application was attached to and made a part of the policy issued. She explained that the insurer has an “unwavering policy” to do so. In deciding to deny coverage, she stated Magnolia Life relied upon the death certificate which represented that Victoria had AIDS for three years prior to his death. She also relied on the University of Texas Medical Branch discharge summaries dated October 21, 1991; July 3, 1992; September 8, 1992; and November 17, 1992 to deny coverage. These discharge summaries, which were entered into evidence, contain notations under the patient history sections which reflect that Victoria was initially diagnosed as HIV positive in October, 1990. At the time, she had no medical records contemporaneous with October of 1990 to verify the correctness of the information contained in the discharge summaries.
*471 Johnathan Dresser, the Liberty Life Director of Career Underwriting, testified that the past medical history questions on a life insurance application are considered important in determining whether to issue a policy. If an applicant answers “Yes” to kan AIDS question, he would deny the application. If Victoria had done so in this case, Dresser stated that he would not have issued the policy.
Also in support of their position, Magnolia Life introduced into the record a May 17, 1991, referral from Ben Taub General Hospital to the Thomas Street Special Medicine Clinic for a May 20, 1991, appointment. The form indicates that Victoria has been “HIV+ since 11/90.” Additionally, Magnolia Life introduced Victoria’s medical records from St. Mary’s Hospital in Port Arthur, Texas.
The trial court took this matter under advisement and rendered written reasons for judgment on May 10, 1994. The trial judge concluded that Magnolia Life was correct in denying coverage based on Victoria’s material misrepresentations in answering questions 14 and 16 on the application form. Notably, he did not rely on Victoria’s negative answer to question 12 relating to AIDS and its related complications. The trial court reasoned as follows:
From the evidence shown, Victoria made false statements on the insurance application. A reasonable assumption could be made that he knew he made false statements, that he intended to deceive Magnolia Life and that he knew these statements would effect Magnolia Life’s decision to provide him with insurance coverage.
The trial court signed a judgment dismissing Hebert’s claims at her cost on August 2, 1994. Thereafter, she perfected this devolu-tive appeal.
OPINION
In her first assignment of error, Hebert contends the trial judge erred in applying the wrong burden of proof to the defendants. She specifically asserts error in the “reasonable assumption” by the trial court that Victoria knew of the falsity, intended to deceive, and knew the false statements would affect Magnolia Life’s decision to provide coverage.
This case is governed by La.R.S. 22:619(B), which provides:
kin any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. (Emphasis ours.)
In Jamshidi v. Shelter Mutual Insurance Company, 471 So.2d 1141, 1143 (La.App. 3 Cir.1985), this court discussed the insurer’s burden of proof as follows:
The jurisprudence interpreting this statute places the burden of proof upon the insurer. The statute provides that a false statement bars recovery only if the insurer proves it is made with the intent to deceive or if it materially affects the risk. However, Louisiana jurisprudence requires proof of both factors. Antill v. Time Ins. Co., 460 So.2d 677 (La.App. 1st Cir.1984); Coleman v. Occidental Life Ins. Co. of N.C., 418 So.2d 645 (La.1982).
The difficulty of proving intent to deceive is recognized by the courts, thus the courts look to the surrounding circumstances indicating the insured’s knowledge of the falsity of the representation made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality. Henry v. State Farm Mut. Auto. Ins. Co., 465 So.2d 276 (La.App. 3rd Cir.1985); Davis v. State Farm Mut. Auto. Ins. Co., 415 So.2d 501 (La.App. 1st Cir.1982); Cousin v. Page, 372 So.2d 1231 (La.1979). (Emphasis ours.)
It is clear that, while the insurer must prove all three elements, i.e., (1) knowing falsity, (2) intent to deceive, and (3) material effect of risk, it may carry its burden through the presentation of circumstantial *472 evidence. Thus, the trial court did not err in applying a “reasonable assumption after consideration of the circumstances” burden of proof.
Plaintiffs next assignment of error addresses the merits of the case — whether Magnolia Life actually carried its burden of proof. After careful consideration of the |7evidence presented, we conclude that the trial court did not manifestly err in concluding that Magnolia Life correctly denied benefits. The medical evidence establishes that Victoria was diagnosed as HIV positive before the date on which he completed the policy application. Additionally, Victoria underwent several medical treatments for his condition within the five year period preceding the application date. However, he answered “No” to question 14 which inquired as to his treatment history in the preceding five years. Had he answered “Yes” to question 14 and further explained himself in question 20 (as instructed), Magnolia Life would have investigated this disclosure and requested the pertinent medical records from the medical providers. It would have discovered that Victoria was HIV positive. According to Dresser, had Magnolia Life known of Victoria’s true health status, it would not have issued the policy.
Clearly, these knowing misstatements materially affected the risk assumed by Magnolia Life. Accordingly, the trial court did not err.
By her third assignment of error, plaintiff argues that the trial court erred in considering the substance of Victoria’s application without first requiring proof that, when the policy was delivered, the application was attached thereto. In this regard, La.R.S. 22:618(A) provides; in pertinent part:
No application for life or health and accident insurance shall be admissible in evidence in any action relative to the policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered.
In Estate of Borer v. Louisiana Health Service & Indemnity Company, 398 So.2d 1124, 1126 (La.1981), the Supreme Court of Louisiana stated:
False statements by the insured in the application for insurance vitiate the contract if they were made with the actual intent to deceive, or if such statements “materially affected either the acceptance of the risk or the hazard |8assumed by the insurer.” R.S. 22:619(B). However, unless the application was attached to the policy when issued and delivered, the application does not become part of the contract, and therefore cannot be admitted into evidence in any action relative to such contract. R.S. 22:618(A). Thus, false statements by the insured in the application cannot be used in evidence if the application is not made part of the contract.
See also Mitchell v. State Farm Fire and Casualty Company, 473 So.2d 399 (La.App. 3 Cir.), writ denied, 477 So.2d 710 (La.1985).
This rule of evidence acts to preclude the admission of, and consideration of, the application unless the insurer first shows that the application was attached to the policy when delivered to the insured. Under Borer, supra, if there is no such initial proof, the insurer cannot raise the material misrepresentation defense but may still raise an exclusion or defense based on the policy itself.
On this issue, Kielmeyer stated that, when the policy was issued, the application was physically attached thereto. She testified on direct examination, over the objection of plaintiffs counsel, that it is Magnolia Life’s unwavering policy to attach the application form to the policy and make it part of the policy. Kielmeyer also examined Victoria’s original application and noted that it contained staple holes. On cross-examination, however, she conceded that she did not recall actually seeing the original policy and application attached thereto prior to it being sent to Victoria.
Plaintiff failed to contradict Kielmeyer’s testimony that Magnolia Life, as per its usual procedure, attached the application to the policy for delivery to the insured. We conclude that Magnolia Life presented sufficient uncontradicted evidence to prove the attach *473 ment. Under these circumstances, La.R.S. 22:618(A) does not operate to preclude the trial court from considering Victoria’s representations on the application.
| ¡Plaintiff next asserts that the trial court erred in failing to assess Magnolia Life with penalties pursuant to La.R.S. 22:656. Our affirmance of the trial court’s judgment necessarily renders this assignment of error moot.
DECREE
For these reasons, we affirm the trial court judgment in favor of defendant-appel-lee, Magnolia Life Insurance Company and against plaintiff-appellant, Lucille T. Hebert. All costs of this appeal are assessed to Lucille T. Hebert.
AFFIRMED.
AMY, J., concurs in the result.